**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **ZACHARY S. MURPHY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:23-cv-00009-HAB-SLC** |
| | ) | |
| **ALLEN COUNTY DCS/CASA,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

Before the Court is a motion to dismiss, a supporting memorandum, and accompanying exhibits filed by Defendants Allen County DCS/CASA ("Department of Child Services" or "DCS") and several individuals affiliated with DCS, Brenda Coffel, Danielle Corcoran, Erin Fallet, Brittani Fields, Jill Harges, and Lisa Hoejke (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), asking that the Court dismiss Plaintiff Zachary Murphy's claims against Defendants. (ECF 21, 22, 24). Plaintiff has not filed a response to the motion, and his time to do so has now passed. N.D. Ind. L.R. 7-1(d)(3).

The District Judge subsequently referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72-1. (ECF 33). For the following reasons, I recommend that Defendants' motion to dismiss (ECF 21) be GRANTED and that Plaintiff be given leave to file an amended complaint.[1]

---

[1] Defendants Suzanne Lange and Nancy Springer, court appointed special advocates for children (CASA), did not file a motion to dismiss, nor did they join Defendants' motion. Therefore, the Court cannot grant the motion to dismiss as to Plaintiff's claims against those parties. *Dawson v. Newman,* 419 F.3d 656, 660 (7th Cir. 2005) (concluding *sua sponte* dismissal of a party's claim when a party has "neither filed nor joined" a motion to dismiss is improper); *Pelham v. Albright*, No. 3:11 CV 99, 2012 WL 1600455, at *7 n.4 (N.D. Ind. May 4, 2012) (same). These two CASA Defendants did, however, file a motion for summary judgment on August 18, 2023 (ECF 34), but that motion is not the subject of this Report and Recommendation.

## I. PROCEDURAL AND FACTUAL BACKGROUND

*Pro se* Plaintiff filed his complaint in this matter on January 6, 2023 (ECF 1), and his complaint alleges, in relevant part, the following:[2]

Plaintiff's troubles began in July 2020, when law enforcement was called during a custody exchange between Plaintiff and his children's mother, Brittany Moore, after Moore attacked Plaintiff. (ECF 27 at 8). The Allen County Department of Child Services and CASA intervened after the children, Plaintiff's daughter, Z.M., and stepdaughter D.G., witnessed the event. (*Id.*). Up until that time, Plaintiff had been afforded parenting time with his children under an Illinois court order, which also permitted him to communicate with Moore about the children. (*Id.* at 10). In response to the altercation, Plaintiff obtained a protective order against Moore, who also obtained one against Plaintiff, a move that would later prove contentious for Plaintiff. (*Id.* at 8).

Subsequently, Moore moved with the children from Illinois to Allen County, Indiana, without notifying or obtaining permission from the court. (*Id.*). Plaintiff then inquired about moving the children back to Illinois to Hoejke, his *pro bono* counsel in Indiana state court, where they were enrolled in school and daycare, where he had a home for them, and where parentage

---

[2] On April 19, 2023, the Court, acting *sua sponte*, entered an Order directing Plaintiff to file an amended complaint on or before May 1, 2023, because his complaint included his minor children's unredacted names, in contravention of Federal Rule of Civil Procedure 5.2(a). (ECF 26). The Court specified that the amended complaint was to be filed "for the sole purpose of identifying minors only by their initials, so that the amended complaint is in compliance with Federal Rule 5.2." (*Id.*). Plaintiff timely filed his amended complaint on May 1, 2023, correcting the deficiencies identified in the Court's April 19, 2023, Order. (ECF 27). Therefore, the Court will cite to the amended complaint.

Further, while an amended complaint supersedes all earlier pleadings and controls the case from that point forward, *French v. Wachovia Bank*, 574 F.3d 830, 835 (7th Cir. 2009), Plaintiff's amended complaint was filed "for the *sole* purpose of identifying minors only by their initials." (ECF 26 (italics added)). A review of the complaint shows that the amended complaint is the same as Plaintiff's initial complaint, except for the names of the minor children which are now replaced with their initials. Thus, the alleged deficiencies in the initial complaint were not remedied in the amended complaint, and the arguments put forth by Defendants in their motion to dismiss stand with respect to the amended complaint.

had already been established. (*Id.;* ECF 22 at 2). This series of events triggered an emergency hearing after which Plaintiff saw his parenting time suspended, was placed on supervised visits, and accused of being the perpetrator of domestic violence. (ECF 27 at 8).

In August 2020, Plaintiff began the supervised visits. Corcoran, a caseworker affiliated with DCS, supervised the first visit, during which she had positive remarks regarding Plaintiff's parenting ability. (*Id.* at 9). Lange and Springer, caseworkers with CASA, and Coffel, a caseworker with DCS, were also involved with the supervised visits. (*Id.*). Plaintiff had heard "nothing but praise from every caseworker" who supervised his visits. (*Id.* at 10).

Soon after the transfer of supervised visits to an organization named SCAN,[3] Plaintiff's children began making disturbing comments about their mother's boyfriend, ranging from accusations that he would follow them to the bathroom to asking the children to shower with him. (*Id.* at 9). The DCS child abuse hotline was contacted—a call Plaintiff was falsely accused of making—after which CASA prevented Plaintiff from visiting his stepdaughter and largely ignored the accusations made by the children. (*Id.* at 9, 10). Moreover, under the supervision of DCS and CASA, Plaintiff's daughter began regressing, notably by not being "taken out of pull ups" despite having been previously "potty-trained" by Plaintiff. (*Id.* at 9). At this point, Plaintiff's and Moore's protective order were used as an excuse to prevent Plaintiff from communicating with his stepdaughter, despite Plaintiff being authorized to have parenting time with his stepdaughter under the Illinois court order and despite the protective orders permitting communications between Plaintiff and Moore about the children. (*Id.*). At the same time, Plaintiff's daughter continued making disturbing accusations about her mother's boyfriend, which continued to be ignored by DCS and CASA caseworkers. (*Id.* at 10-11).

---

[3] According to the website in Defendants' brief (ECF 22 at 2, n.1), SCAN stands for "Stop Child Abuse and Neglect."

To add insult to injury, Plaintiff's children were allowed to have unsupervised, in person visits with Plaintiff's stepdaughter's biological father despite being prohibited to do so under an Illinois protective order, due to him threatening to kill the children on multiple occasions. (*Id.* at 10). Plaintiff informed DCS and CASA of the existence of this order, but the caseworkers responded that they did not have to comply with the order given that it was issued by another state court. (*Id.*).

Sometime in November 2020, an Indiana court got involved through Child in Need of Services ("CHINS") proceedings, though it is unclear which of the above events triggered the court's involvement. (*Id.* at 9). But less than a year into the CHINS proceedings, in August 2021, Plaintiff was incarcerated in the Whitley County Jail and was then placed on probation. (*Id.* at 10). Two months later, he was arrested for violating his probation and was scheduled for a revocation of release hearing. (*Id.* at 10-11). During the hearing, Plaintiff's probation officer, Cassandra Lock, used testimony she had obtained from Lange, Springer, Corcoran, and Coffel, stating Plaintiff had violated a protective order issued by the state of Illinois—an allegation that was "merit-less." (*Id.*). As a result, the court revoked Plaintiff's probation. (*Id.*).

In November 2021, the judge overseeing the CHINS proceedings, apparently realizing that the Indiana court was not vested with jurisdiction, instructed Plaintiffs' *pro bono* counsel to file a motion to domesticate a foreign judgment "to justify a transfer of jurisdiction of child custody," despite knowing of this procedural deficiency for a year. (*Id.* at 9).

In December 2021, DCS caseworkers Fallet and Harges took over the supervision of his children. (*Id.* at 11). Soon after, Fallet informed Plaintiff that CASA disfavored communications between him and his daughter, after which "she has refused any contact" with Plaintiff. (*Id.*).[4]

---

[4] It is unclear whether Fallet of Plaintiff's daughter refused contact with Plaintiff.

Since his release from jail in July 2022,[5] he has only been able to communicate with his daughter once through a supervised visit facilitated by Shanita Redd, a DCS caseworker. (*Id.*). Although the caseworkers, along with Redd, agreed to resume visits, the caseworkers' tune changed when they again restricted Plaintiff from visiting his daughter. (*Id.* at 11-12).

Plaintiff now brings a claim under 42 U.S.C. § 1983 against Defendants Coffel, Corcoran, Fallet, Fields, Harges, Hoejke, Springer, and Lange in their individual and official capacities, and against Defendant DCS. (*Id.*). He accuses Defendants to have colluded against him to deny his rights to raise his daughters, to slander and defame him, to allow hearsay and fabricated testimony in CHINS proceedings with no factual basis, and to admitting denying him access to his daughter because "some" Defendants do not like him. (*Id.* at 4, 12). He also states that Fields, a DCS caseworker, has "admitted [that] the sole purpose of continuing this case is because they do not want to follow the [Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA)] and allow [his] parenting plan from Illinois to go into effect." (*Id.* at 12). In Plaintiff's eyes, his children's mother is attempting to conceal the children from him, and Defendants are taking her side despite the evidence he has put forth. (*Id.*). For that reason, Plaintiff claims that Defendants are refusing to communicate with him or attempt to witness his interactions with his children. (*Id.* at 11-12).

As part of his §1983 claim, Plaintiff alleges (1) gender discrimination, (2) interference with custody, (3) invasion of privacy, (4) child abuse and neglect, and violations of (5) the UCCJEA, Indiana Code §§ 31-21, *et seq*, and specifically, §§ 31-21-5-7, 31-21-5-8, (6) his due process and fathers' rights, (7) the Health Insurance Portability and Accountability Act

---

[5] The complaint alleges that Plaintiff was released from jail in July 2021. However, as Defendants argue, Plaintiff went to jail in October 2021, and thus it appears a reasonable interpretation of the complaint is that Plaintiff was released in July 2022. (ECF 22 at 3 n.2).

("HIPAA"), (8) 28 U.S.C. § 1359, (9) the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A, and (10) 18 U.S.C. § 241. (*Id.* at 4). Plaintiff now requests $1,750,000 in punitive damages and compensation to pay for therapy for himself and his daughter. (*Id.* at 6). He also requests "the [i]ndividuals and the agencies be reprimanded for their actions and to immediately close the CHINS case and have no jurisdiction over [his] children." (*Id.*).

As stated above, Defendants filed their motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) and a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) on April 7, 2023, along with a supporting memorandum and accompanying exhibits. (ECF 21, 22, 24). Plaintiff never filed a response to Defendants' motion to dismiss, and his time to do so has passed. N.D. Ind. L.R. 7-1(d)(3).

## II. LEGAL STANDARD

### *A. Rule 12(b)(1)*

A court has subject-matter jurisdiction if it has federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. Federal jurisdiction is satisfied if a case arises "under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, whereas diversity jurisdiction is satisfied when the parties are diverse and the case involves an amount in controversy exceeding $75,000, *id.* § 1332. When subject-matter jurisdiction is challenged, the plaintiff bears the burden of demonstrating that the jurisdictional requirements have been met. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589 (7th Cir. 2014). Subject-matter jurisdiction is not a waivable defense, and as such, the parties or the Court can raise the issue of lack of subject-matter jurisdiction at any time during the proceedings. Fed. R. Civ. P. 12(h)(3); *Gaunce v. deVincentis,* 708 F.2d 1290, 1291 (7th Cir. 1983).

6

*B. Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted); *see also Ray v. City of Chi.*, 629 F.3d 660, 662-63 (7th Cir. 2011) ("While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When a party moves to dismiss a claim under Rule 12(b)(6), the factual allegations in the complaint must be accepted as true and read in the light most favorable to the nonmovant. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1006 (7th Cir. 2000). And if a plaintiff is proceeding *pro se*, the court must liberally construe his pleading. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). *Pro se* submissions are held "to a less stringent standard than formal pleadings drafted by lawyers." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citations omitted).

### III. ANALYSIS

Plaintiff has not filed a response to Defendants' motion to dismiss or any other filing requiring a responding pleading, nor has Plaintiff taken action in this case since May 2023. This

suggests Plaintiff may have abandoned this case, and a failure to prosecute may subject Plaintiff's case to dismissal under Federal Rule Civil Procedure 41 and Northern District of Indiana Local Rule 41-1.

Nevertheless, because the Seventh Circuit has cautioned against granting a motion to dismiss based on a lack of response, the Court will evaluate Defendants' arguments on the merits. *See Marcure v. Lynn*, 992 F.3d 625, 633 (7th Cir. 2021) ("[W]e hold that . . . Rule 12(b)(6) prevents courts from granting unopposed motions solely because there is no response." (footnote omitted)).

### A. Subject-Matter Jurisdiction

1. <u>Eleventh Amendment</u>

Defendants first assert that the Eleventh Amendment bars the Court's assertion of subject-matter jurisdiction over Plaintiff's claims against Defendant DCS and the individual Defendants in their official capacity. (ECF 22 at 4-5).

"[The Eleventh] Amendment deprives federal courts of jurisdiction when its immunity applies." *McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 533 (7th Cir. 2022). It provides that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state . . . . regardless of the nature of the relief sought." *Hetherington v. Dep't of Child Servs.*, No. 2:11-CV-62 RLM, 2012 WL 523712, at *3 (N.D. Ind. Feb. 14, 2012) (alteration in original) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984)); *see also Brokaw*, 235 F.3d at 1009 ("Federal suits against state officials in their official capacities are barred by the Eleventh Amendment." (citation omitted)).[6]

---

[6] While there are exceptions to Eleventh Amendment immunity, *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012), Plaintiff has not alleged or argued that any of them apply here.

States enjoy Eleventh Amendment immunity in suits brought under 42 U.S.C. § 1983. *Quern v. Jordan,* 440 U.S. 332, 341-345 (1979). "This principle extends to governmental entities and agencies, like the Indiana Department of Child Services, that are considered to be 'arms of the state.'" *Hetherington*, 2012 WL 523712, at *3 (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70 (1989); Ind. Code § 31-25-1-1); *id.* ("Suits against state agencies, like the Indiana Department of Child Services, are . . . barred by the Eleventh Amendment." (citing *Indiana Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.,* 603 F.3d 365, 370 (7th Cir. 2010) (footnote omitted)); *Martin v. Indiana*, No. 1:12 CV 69 JM, 2013 WL 1332165, at *3 (N.D. Ind. Mar. 29, 2013) (stating the Allen County Department of Child Services is an agency of the State of Indiana). In turn, state officials like DCS caseworkers also enjoy immunity when sued for money damages based on actions taken in their official capacities. *Hetherington*, 2012 WL 523712, at *3 (collecting cases).

Here, Plaintiff sues the Allen County Department of Child Services and several DCS caseworkers in their official capacities. The Eleventh Amendment bars those claims because the Allen County Department of Child Services and the DCS caseworkers are immune under the Eleventh Amendment. On this basis, I FIND that Plaintiff's claims against Defendant DCS and Plaintiff's claims against Defendants Coffel, Corcoran, Fallet, Fields, Harges, and Hoejke in their official capacity should be dismissed as barred under the Eleventh Amendment.

2.  Abstention

Defendants also contend the Court should refrain from asserting its jurisdiction under the *Younger* abstention doctrine. (ECF 22 at 5-9).

"The basic principle of *Younger* abstention is that, absent extraordinary circumstances, a federal court should not interfere with pending state judicial proceedings." *Brunken v. Lance,*

807 F.2d 1325, 1330 (7th Cir. 1986) (citations omitted). "*Younger* and its progeny require federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances—like bias or harassment—exist which auger against abstention." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 596 (7th Cir. 2007) (citations and internal quotation marks omitted). "Abstention doctrines are jurisdictional in nature." *Manos v. Caira*, 162 F. Supp. 2d 979, 986 (N.D. Ill. 2001) (citation omitted).

In support of their abstention argument, Defendants state that Plaintiff is requesting this Court to interfere with the ongoing CHINS proceedings, which "would offend the principles on which the abstention doctrines rest." (ECF 22 at 5-7 (citing *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021))). In that regard, they maintain that child welfare and child custody proceedings are quintessential issues involving the state's interest. (*Id.* at 6). They further argue that the CHINS proceedings permit Plaintiff to adjudicate his constitutional claim and to appeal any adverse action, and that Plaintiff's case does not present any extraordinary circumstances warranting intervention of a federal court. (*Id.* at 7-8).

Taking a step back, the claims remaining for the Court's consideration are Plaintiff's claims against the individual Defendants based on acts taken in their individual capacities, given that the Eleventh Amendment bars Plaintiff's claims against Defendant DCS and against the individual Defendants for acts taken in their official capacities. As applied to those claims, the *Younger* doctrine favors abstention.

Plaintiff's claims in the federal lawsuit arise out of the CHINS proceedings and the related determinations of his parental rights. However, CHINS proceedings are judicial in nature, and the record indicates that the proceedings are ongoing. *See Brown v. Consol. City of*

*Indianapolis*, No. 1:05-CV-1585-RLY-VSS, 2006 WL 8448164, at *3 (S.D. Ind. June 20, 2006);

*Rangel v. Reynolds*, No. 4:07-CV-20 AS, 2007 WL 1189356, at *2 (N.D. Ind. Apr. 18, 2007)

("The plaintiffs filed their complaint on March 12, 2007, while the state proceedings regarding

custody of their child . . . were still pending. As of the date of this order, those state court

proceedings are still pending.").[7] Additionally, "[c]ore matters of family law, such as divorce and

child custody, are considered to be the province of the state courts." *Azizarab v. State*, No. 99 C

8167, 2000 WL 152140, at *2 (N.D. Ill. Feb. 4, 2000); *see Milchtein v. Chisholm*, 880 F.3d 895,

899 (7th Cir. 2018). "Federal courts have accepted, and Congress has acquiesced in, the rule that

federal courts do not exercise jurisdiction to decide them." *Azizarab*, 2000 WL 152140, at *2

(citing *Ankenbrandt v. Richards,* 504 U.S. 689 (1992); *Friedlander v. Friedlander,* 149 F.3d 739,

740-41 (7th Cir. 1998)). Thus, when as here, the case involves a matter of state interest (child

custody) in ongoing CHINS proceedings, the first two factors of the *Younger* doctrine favor

abstention.

  The third factor of the *Younger* doctrine also supports abstention. "[W]hen a litigant has

not attempted to present his federal claims in related state-court proceedings, a federal court

should assume that state procedures will afford an adequate remedy, in the absence of

unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

Plaintiff has not alleged in his complaint that he attempted to raise his constitutional claims

during the CHINS proceedings, nor has he alleged that any barriers preventing him from doing

---

[7] "In addressing a motion to dismiss for lack of subject matter jurisdiction, a district court has the authority to consider matters outside the pleadings to determine whether subject matter jurisdiction in fact exists." *Hanover Grp., Inc. v. Manufactured Home Cmties. Inc.*, No. IP00-0739-C-T/G, 2000 WL 1124877, at *2 (S.D. Ind. July 12, 2000) (citations omitted). Defendants have submitted two documents labeled "Order on Review Hearing" and "Order on Detention Hearing" from the Allen Superior Court demonstrating that as of November 22, 2022, and March 23, 2023, state court CHINS proceedings related to the custody issues were underway. (ECF 24 at 1, 7). Therefore, the undersigned takes judicial notice of those documents because they bear on the issue of subject-matter jurisdiction.

so exist, and there is no authority suggesting that the CHINS proceedings could not afford him an opportunity to litigate his constitutional claims. *Nicole K. v. Stigdon*, No. 1:19-cv-01521-JPH-MJD, 2020 WL 1042619, at *4 (S.D. Ind. Mar. 3, 2020), (concluding the plaintiffs have not shown they were prevented to raise their federal constitutional challenges in their pending CHINS cases because they failed to "identify any legal barrier to raising their claims in their CHINS proceedings," and because "they have not alleged or argued that they tried to raise these claims there" (citations omitted)), *aff'd*, 990 F.3d 534 (7th Cir. 2021)); *Brown*, 2006 WL 8448164, at *3 ("[T]he CHINS proceeding includes an adequate opportunity for Brown to raise his constitutional arguments as defenses under Indiana and federal law. It does not matter whether Brown has actually presented these challenges in state court. Brown is aware of the CHINS proceeding and is a party to it, and in fact is represented by counsel in that proceeding. He is participating in it or has the opportunity to do so, and has the further opportunity of redress through the appellate courts of Indiana if he is dissatisfied with the outcome of the proceeding in the trial court."); *see also Ashley W. v. Holcomb*, 34 F.4th 588, 591 (7th Cir. 2022) ("In a CHINS . . . proceeding, state law entitles the child's parents to counsel as a matter of right . . . ." (citing Ind. Code §§ 31-32-4-1, 31-34-4-6(a)(2)(A))).[8]

To the contrary, "Indiana authority indicates that parties to a CHINS proceeding are able to bring constitutional claims of due process violations at the time of the proceeding as well as appeal an adverse decision on due process grounds." *Hatch v. Ind. Dep't of Child Servs.*, No. 1:17-CV-357-TLS, 2018 WL 1725883, at *2 (N.D. Ind. Apr. 9, 2018) (collecting cases); *cf. Majors v. Engelbrecht*, 149 F.3d 709, 713 (7th Cir. 1998) ("[T]he [administrative] proceeding allow an adequate opportunity to raise constitutional challenges. Subsequent judicial review is a

---

[8] Plaintiff alleges several due process barriers in his state court proceeding but none of the barriers identified prevent him from raising constitutional challenges.

sufficient opportunity, and here Indiana law provides for review of constitutional claims by way of a petition to the state court . . . ." (citing *Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 629 (1986))). In sum, the record shows that "[s]tate court proceedings associated with the CHINS proceeding are ongoing, implicate important state interests, and provided [Plaintiff] an adequate opportunity to litigate his federal claims," which supports abstaining from the case. *Brown*, 2006 WL 8448164, at \*4.

As for the fourth factor, whether extraordinary circumstances like bias or harassment exist which would disfavor abstention, "[g]iven that Plaintiff did not respond to the motion, he raises no argument for the application of [the *Younger* exception]." *Cichocki v. Foxx*, No. 20-CV-02165, 2022 WL 2915640, at \*5 n.3 (N.D. Ill. July 25, 2022). Nevertheless, Plaintiff's complaint appears to allege that extraordinary circumstances of bias, bad faith, or harassment exist, which may militate against the Court abstaining under the *Younger* doctrine. Indeed, "a district court should not abstain under *Younger* where . . . the pending state proceeding was motivated by a desire to harass or is conducted in bad faith . . . ." *FreeEats.com*, 502 F.3d at 596 (italics added) (citations and internal quotation marks omitted); *see Huffman v. Pursue, Ltd.,* 420 U.S. 592, 611 (1975); *Brunken*, 807 F.2d at 1331. "A plaintiff seeking to invoke this exception must satisfy a demanding standard by alleging specific, well-developed facts sufficient to convince the court it realistically must intervene to protect the plaintiff's constitutional rights." *Lewis v. Zoeller*, No. 1:12-CV-1093-WTL-MJD, 2012 WL 5384704, at \*2 (S.D. Ind. Nov. 1, 2012) (citing *Crenshaw v. Sup. Ct. of Ind.,* 170 F.3d 725, 729 (7th Cir. 1999); *Trust & Inv. Advisers, Inc. v. Hogsett,* 43 F.3d 290, 296-97 (7th Cir. 1994)).

In this regard, the complaint represents that the CHINS proceedings "may have started out as good faith," but that Defendants' acts eventually became motivated by bad faith. (ECF 27

at 8). For example, the complaint states that "some" Defendants "admitted" that their acts were motivated by the fact that "they do not like [Plaintiff]." (*Id.* at 12). The complaint also alleges that Corcoran and Fallet testified to Plaintiff's probation officer that he had violated a protective order, allegations which Plaintiff characterizes as "merit-less." (*Id.* at 11). And the complaint also states that Fields "admitted [that] the sole purpose of continuing [the CHINS] case is because they do not want to follow the UCCJEA and allow [Plaintiff's] parenting plan from Illinois to go into effect." (*Id.* at 12). However, none of these allegations support the application of the *Younger* exception.

To start, the complaint lacks specific facts regarding the allegations that "some" defendants admitted they did not like Plaintiff, notably the identity of the Defendants who made the allegations. The other allegations of bias or harassment, too, do not support applying the exception. As for the allegation that Corcoran and Fallet falsely accused Plaintiff of violating a protective order, these acts do not in themselves suggest that Defendants were biased or that they harassed Plaintiff because, for all the Court knows, the caseworkers could have made an error of fact or law in reporting the violation of a protective order. And as will be discussed below, even if those acts were probative of bias or harassment, absolute immunity would apply to those acts. Additionally, regarding the fact that Fields admitted not wanting to follow the UCCJEA and honor the Illinois parenting plan, that allegation says nothing about Fields being biased or the CHINS proceedings being conducted in bad faith given that there may be legitimate reasons for the caseworkers to believe the Illinois parenting plan or following the UCCEJA would be inappropriate for Plaintiff's children's safety.[9]

---

[9] Plaintiff concedes the CHINS proceedings were precipitated by the report of a domestic violence incident in July 2020, and he admits that he went to jail a year later, though it is unclear why. (*See* ECF 27 at 8, 10-11).

In sum, the complaint does not allege that Defendants' bias against Plaintiff would be so "exceptional" as to compel applying the "narrow" *Younger* exception. *Living Word Outreach Full Gospel Church & Ministries, Inc. v. City of Chi. Heights*, No. 96 C 2508, 1996 WL 529376, at *3 (N.D. Ill. Sept. 16, 1996) ("In order to satisfy the narrow constraints of this exception, the Church must offer specific facts to support an inference of bad faith." (citing *Collins v. Kendall Cnty., Ill.,* 807 F.2d 95, 98 (7th Cir. 1986))).

Plaintiff's allegations of bias would be more concerning if the complaint laid out exactly what role each defendant played in the CHINS proceedings. But as things stand, the complaint does not establish, and thus it is unclear, if any such bias or harassment impacted the state court proceedings such that it could be said to be *conducted* in bad faith. Without more, these allegations of bias are merely conclusory. *Brown*, 2006 WL 8448164, at *3 ("[C]onclusory assertions of bias or harassment are insufficient to bring the bad faith exception into play." (citing *Crenshaw,* 170 F.3d at 729; *Pincham v. Jud. Inquiry Bd.*, 872 F.2d 1341, 1349 (7th Cir. 1989))); *see Martin*, 2013 WL 1332165, at *2.[10] Therefore, I FIND that the *Younger* abstention doctrine applies and that "[t]he better path—since Indiana courts are competent to adjudicate [the] federal constitutional claims—is to leave the integrated CHINS framework to the Indiana courts." *Nicole K.*, 2020 WL 1042619, at *4 (citations and footnote omitted).[11] That said,

---

[10] Plaintiff states that he has proof of discrimination and bias, such as emails and a witness willing to testify, but did not present such proof to the Court. (*See* ECF 27 at 12). Of course, at this juncture, Plaintiff need not prove his claims, but he must make more than bare or conclusory allegations. Stating that he has proof of bias does not cure the complaint's deficiencies.

[11] The Court may also abstain on two other possible grounds. First, the Court may abstain based upon the domestic relations exception which "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Brown*, 2006 WL 8448164, at *4 (citing *Ankenbrandt*, 504 U.S. at 703-06). "[E]ven when subject-matter jurisdiction might be proper, . . . sufficient grounds may exist to warrant a court's abstention from the exercise of jurisdiction in cases involving elements of a domestic relationship." *Id.* (citing *Ankenbrandt*, 504 U.S. at 704). The Court may also abstain based on the *Rooker-Feldman* doctrine to the extent Plaintiff is seeking to reverse an adverse judicial termination by the state court. Indeed, the "remedy for that is by appeal in state court. The *Rooker-Feldman* doctrine prevents [a plaintiff] from waging a collateral attack on the judgment by way of federal constitutional claims for damages." *Martin*, 2013 WL 1332165, at *5 (citing *Bach v. Milwaukee Cnty.,* 490 Fed. App'x. 806 (7th Cir. 2012)).

Plaintiff should be given leave to amend his complaint should he be able to allege facts supporting that the CHINS proceedings were conducted with bias, harassment, or bad faith.

### B. Failure to State a Claim

Notwithstanding abstention, Defendants argue that Plaintiff's claims under 42 U.S.C. § 1983 fail as a matter of law. Section 1983 provides that:

> [e]very person who, under color of . . . [law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

"For constitutional violations under § 1983 . . . , a government official 'is only liable for his or her own misconduct.'" *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (citing *Iqbal,* 556 U.S. at 676). In other words, "liability under § 1983 must be predicated upon personal responsibility." *Brownlow v. Van Natta*, 2 F. App'x 516, 518 (7th Cir. 2001) (citations omitted). "[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation." *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (citation and internal quotation marks omitted). "[A] § 1983 plaintiff must establish that the defendant acted or failed to act with a deliberate or reckless disregard of the plaintiff's constitutional rights." *Brownlow*, 2 F. App'x at 518 (citing *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000)).

Here, Plaintiff alleges that he was deprived of due process and of his right to privacy, and that Defendants discriminated against him on the basis of his gender. He also alleges a slew of federal statutory violations and state law claims to support his claim under § 1983. Each claim will be evaluated in turn.

### 1. Due Process

Defendants contend that to the extent Plaintiff asserts a due process claim under the Fourteenth Amendment, such claim fails as a matter of law. (ECF 22 at 12-13). Notably, they

16

argue a substantial due process claim would fail because Defendants have absolute immunity and because there was a reasonable suspicion that Plaintiff's children were in need of services, thus triggering the CHINS proceedings. (*Id.*). They also maintain a procedural due process claim would fail against Defendants because Plaintiff has not identified a procedural deficiency in the CHINS proceedings. (*Id.* at 13).

"The Fourteenth Amendment provides in part that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 599 (7th Cir. 2022) (quoting U.S. Const. amend. XIV, § 1). "The Due Process Clause has a substantive and procedural component. But the scope of substantive due process is very limited." *Id.* (citation, brackets, and internal quotation marks omitted). Because Plaintiff's claims against Defendant DCS and against the individual Defendants in their official capacities do not survive the Eleventh Amendment bar, Plaintiff's claims can only stand in so far as they arise from Defendants' acts committed in their individual capacity.

a.  <u>Substantive Due Process</u>

A violation of substantive due process requires that "(1) the party against whom the claim is brought qualifies as a person acting under the color of state law; and (2) the conduct alleged amounted to a deprivation of rights, privileges, or immunities under the Constitution or the laws of the United States." *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 397 (7th Cir. 2015) (citation and internal quotation marks omitted); *Thomas v. Starks*, 159 F. App'x 716, 717 (7th Cir. 2005). "Substantive due process protects against only the most egregious and outrageous government action." *Lukaszczyk*, 47 F.4th at 599 (citation omitted). "When stating a claim, a plaintiff must allege that the government violated a fundamental right or liberty," and the violation "must have been arbitrary and irrational." *Id.* (citation and internal quotation marks omitted).

Plaintiff alleges that his parental rights were violated when he was deprived of visiting and communicating with his children. (ECF 27 at 8-11). "[T]here is a clearly established Fourteenth Amendment right to familial relations without government interference." *Mabes v. McFeeley*, No. 1:21-cv-02062-JRS-DLP, 2022 WL 20357990, at *5 (S.D. Ind. Sept. 22, 2022) (citing *Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011)); *see Thomas*, 159 F. App'x at 717. "A family's right to remain together without the coercive interference of the awesome power of the state is the most essential and basic aspect of familial privacy . . . . The fundamental right to familial relations is an aspect of substantive due process." *Mabes*, 2022 WL 20357990, at *5 (alteration in original) (citing *Hernandez*, 657 F.3d at 478).[12]

Nevertheless, that right "is not absolute." *Brokaw*, 235 F.3d at 1019 (citation omitted). "Indeed, this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children particularly where the children need to be protected from their own parents." *Id.* (citation omitted). For example, the right to familial relations does not include "the right to be free from child abuse investigations." *Thomas*, 159 F. App'x at 717 (citation omitted). As such, in balancing the fundamental right to the family unit and the state's interest, "courts have recognized that a state has no interest in protecting children from their parents unless it has some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Brokaw v*, 235 F.3d at 1019 (citation omitted). "CHINS proceedings are one example of an instance in which the law recognizes the state's interest in protection of children and will limit parental rights when the appropriateness of the care given a child is questioned." *Millspaugh v. Wabash Cnty. Dep't of*

---

[12] Relatedly, "a parent's right to enjoy the companionship of his children . . .'is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme Court].'" *United States v. Lee*, 950 F.3d 439, 448 (7th Cir. 2020) (second alteration in original) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)).

*Pub. Welfare*, 746 F. Supp. 832, 848-49 (N.D. Ind. 1990), *aff'd sub nom. Millspaugh v. Cnty. Dep't of Pub. Welfare of Wabash Cnty.*, 937 F.2d 1172 (7th Cir. 1991) (collecting cases).

In child custody cases, social workers and like public officials enjoy absolute immunity from a lawsuit based on alleged conduct that is "'intimately associated with the judicial process,'" and involves their 'testimony and other steps taken to present the case for decision by the court.'" *Pelham*, 2012 WL 1600455, at *7 (citing *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976); *Millspaugh,* 937 F.2d at 1176); *see id.* (stating immunity applies even if the defendants "may have misled the court or possessed improper motives" (citation omitted)).

On the other end, "officials' investigatory actions are not protected by absolute immunity because investigations are too remote from judicial proceedings to justify application of the immunity." *Id.* (collecting cases). Thus, "absolute immunity does not protect the gathering of evidence by a social worker . . . even though the acts of presenting that evidence to (or withholding it from) the court receive greater protection." *Id.* (citing *Millspaugh,* 937 F.2d at 1176) (brackets omitted). Accordingly, Defendants are entitled to absolute immunity for any allegations relating to their failure to proffer positive parenting reports during the CHINS proceedings and any representations made during court hearings. To that end, Hoejke is immune from any acts that occurred during the emergency hearing leading to Plaintiff's suspension of parenting time and institution of supervised visits. (*See* ECF 27 at 8); *Millspaugh*, 937 F.2d at 1175 (concluding caseworker had absolute immunity from allegations that she "(1) failed to furnish the court with material that would have been favorable to parental custody, (2) pursued the litigation after it should have been clear that the mothers were entitled to custody, (3) pursued the litigation for an improper motive, and (4) neglected to ensure that the mothers received adequate notice of hearings").

The remaining following allegations against the individual Defendants can be discerned as potential grounds for violation of due process: that Corcoran and Coffel misrepresented to Plaintiff's probation officer that he had violated a protective order, that Fallet informed Plaintiff that CASA was against him communicating with his daughter and that, subsequently "she has refused any contact with" him, and that Fields admitted continuing the CHINS proceedings to skirt the UCCJEA and prevent the application of Plaintiff's parenting plan from Illinois. (*See* ECF 27 at 9, 11-12).[13] In their motion, Defendants argue that Plaintiff has not plead sufficient facts to establish personal involvement, given that "the individual Defendants appear sparingly throughout the complaint." (ECF 22 at 13).

Indeed, Plaintiff's allegations fall short of making a substantive due process claim against the individual Defendants. As for the allegations against Corcoran and Coffel, "[i]t is true that the Seventh Circuit has recognized in the context of child removal cases that 'no matter how much process is required, at a minimum it requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents.'" *Justice v. Justice*, 303 F. Supp. 3d 923, 942 (S.D. Ind. 2018) (quoting *Brokaw*, 235 F.3d at 1020). However, Corcoran and Coffel made the alleged statements in the context of Plaintiff's criminal case, not the CHINS proceedings. *Dircks v. Ind. Dep't of Child Servs.*, No. 1:21-CV-00451-JMS-MG, 2022 WL 742435, at *35 (S.D. Ind. Mar. 11, 2022) (contrasting misrepresentations made in the context of seeking law enforcement assistance for the social workers and the context of a statement made to a court deciding whether the children should be removed).[14]

---

[13] Plaintiff makes several other allegations but because he does not explain which individual Defendant is involved in the alleged acts, the Court cannot discern each Defendant's personal involvement. *See Minix*, 597 F.3d at 833; *Martin*, 2013 WL 1332165, at *5 (N.D. Ind. Mar. 29, 2013) ("[Plaintiff] does not plead exactly what role any of these defendants played in the investigation and related proceedings.").

[14] Additionally, Plaintiff's allegation raises an issue of causation. "Causation is a necessary element for any constitutional claim. If a defendant's actions, however blameworthy, did not cause a plaintiff's injuries, the

Turning to the allegation levied against Fields, such allegation fails to support a violation of Plaintiff's due process right to familial relationship. While Fields allegedly admitted to continuing the CHINS proceedings to prevent the application of Plaintiff's Illinois parenting plan, there is no other allegation against Fields in the complaint indicating that she was personally involved in the CHINS proceedings, that she participated in the decision to restrict Plaintiff's parental rights, or that her actions somehow caused or contributed to the progressive attrition of Plaintiff's parental time. *See Mabes*, 2022 WL 20357990, at *11; *Pelham*, 2012 WL 1600455, at *8. This allegation too falls short of supporting a substantive due process claim.

Plaintiff's allegations against Fallet are also insufficient. That Fallet shared with Plaintiff that CASA was no longer in favor of Plaintiff communicating with his daughter does not implicate Fallet's personal involvement in the deprivation of Plaintiff's rights because there is no allegation that Fallet made this decision and because CASA is another entity entirely. *See Mabes*, 2022 WL 20357990, at *11; *Locke*, 788 F.3d at 669 ("For constitutional violations under § 1983 . . . , a government official is only liable for his or her own misconduct." (citation and internal quotation marks omitted)). Plaintiff also alleges that after Fallet informed him that CASA was no longer in favor of Plaintiff communicating with his daughter, "she has refused any contact with [him]." (ECF 27 at 11). It is unclear whether (1) Fallet refused to have contact with Plaintiff, or (2) whether Plaintiff's daughter refused to have contact with Plaintiff, but under either interpretation, any inference that Fallet's actions would result in a violation of Plaintiff's

---

defendant cannot be said to have deprived him of his constitutional rights." *Pelham*, 2012 WL 1600455, at *8 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 812 F.2d 298, 302 (7th Cir. 1987)). "The Seventh Circuit has surmised that a simple way of determining whether causation has been established in the context of alleged constitutional wrongs is to ask whether the alleged injury would have occurred even if the defendants had never existed." *Id.* at *9. Here, Plaintiff alleges he believes his probation rights were revoked due to the statements made by Defendants. (ECF 27 at 11). However, it is unclear what effect, if any, the revocation of his probation had on his parental rights.

constitutional rights would be unconvincing given that neither interpretation explain how this chain of events would have caused Plaintiff's parental rights to be impacted.

Therefore, none of Plaintiff's allegations survive Rule 12(b)(6) scrutiny because Plaintiff fails to plausibly allege that the individual Defendants violated Plaintiff's substantive due process rights. Nevertheless, because Plaintiff states that the complaint contains a "condensed version of events" (*Id.* at 8), Plaintiff could plead additional facts that would remedy the deficiencies identified herein. As such, Plaintiff should be given leave to amend his complaint to support a substantive due process claim against the Defendants in their individual capacity.

### b.  Procedural Due Process

In so far as Plaintiff makes a procedural due process claim under § 1983, he must allege "(1) [a] deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018) (citation omitted); *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010) (quotation omitted).

Plaintiff's complaint fails to meet the second requirement of a procedural due process claim.[15] His theory relies, not on the fact that he was deprived of CHINS proceedings, but rather on the theory that the CHINS proceedings were themselves procedurally deficient. In doing so, he alleges that Defendants conspired against him to deprive him of his procedural rights. (ECF 27 at 4 ("The defendants have colluded to deny my rights . . . ."), 8 ("This is not only one person doing all the alleged actions in this matter but a collusive effort by all of the defendants.")). He generally states that DCS caseworkers have "willfully neglected to read [positive parenting]

---

[15] As discussed in the paragraphs above, Plaintiff alleges that he was denied the right to familial relations, "which is a protected liberty interest." *H.P. v. Kelley*, 586 F. Supp. 3d 844, 850 (S.D. Ill. 2022) (citing *Brokaw*, 235 F.3d at 1020). Thus, the first requirement of a procedural due process claim is met.

reports . . . to persuade the courts to continue violating [his] rights as a father" (*id.* at 10), that the caseworkers ignored evidence that Moore concealed the children from Plaintiff (*id.* at 11), that they do not "listen to the facts and continue to defame [Plaintiff] in open court" (*id.*), and again that Corcoran and Coffel misrepresented to his probation officer that he violated a protective order (*id.* at 12).[16]

None of Plaintiff's allegations, however, suggest that the CHINS proceedings were procedurally deficient. As concluded above, Defendants' misrepresentation to Plaintiff's probation officer were made in the context of Plaintiff's criminal case, not the CHINS proceedings, and the caseworkers are generally immunized for acts taken during the CHINS proceedings, including choosing which evidence to present to the court. *See Pelham*, 2012 WL 1600455, at *7 ("the acts of presenting that evidence to (or withholding it from) the court receive greater protection."). Further, to the extent Plaintiff alleges the caseworkers were neglectful, "there exists no constitutional right to a competent social worker." *Id.* (citing *DeShaney,* 812 F.2d at 304; *Archie v. City of Racine,* 847 F.2d 1211, 1221 (7th Cir. 1988)); *see Archie,* 847 F.2d at 1221 ("[T]he Due Process Clause does not ensure that social workers will be competent, even if incompetence exposes children to grave injury . . . ."). Moreover, Plaintiff's allegation that he was defamed and slandered in court are merely conclusory statements that do not meet the pleading standard of Rule 8. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)). And generally, the same issue plagues Plaintiff's procedural due process claim, that is, he fails to specify which Defendant was individually involved in the proceedings. *Minix*, 597 F.3d at 833

---

[16] Plaintiff makes other allegations against the judge who presided over the CHINS proceedings, stating that he was permitted to attend a hearing telephonically but not in person, and that the judge did not hold Moore accountable for removing the children from Illinois earlier in the case. (*Id.* at 5, 9). However, the judge is not a party in this case so those allegations cannot support a claim that the individual Defendants violated Plaintiff's due process rights.

(7th Cir. 2010) (stating liability under §1983 lies where the defendant has "personal involvement").

Plaintiff's conspiracy theory allegations also fail to support a procedural due process violation. If Plaintiff claims a § 1983 violation through a conspiracy theory, he must allege that "there was an understanding involving a state actor to deprive [him] of [his] constitutional rights and that those individuals were 'willful participants in joint activity with the State or its agents.'" *Vanwinkle v. Nichols*, No. 1:15-cv-01082-JMS-MJD, 2015 WL 9275671, at *10 (S.D. Ind. Dec. 18, 2015) (quoting *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)). Put simply, a conspiracy claim cannot lie where there is no allegation that "an agreement or understanding amongst the conspirators" exists. *See Boyko v. Parkview Hosp. Inc.*, No. 1:10 CV 260, 2012 WL 3527373, at *3 (N.D. Ind. Aug. 14, 2012). The complaint lacks such allegation, so a conspiracy theory cannot carry Plaintiff's allegation of a procedural due process violation. In sum, I FIND that the allegations in Plaintiff's complaint do not state a claim that Plaintiff was deprived of his procedural due process rights. As was the case for his substantive due process claim, the complaint's deficient allegations may not foreclose his procedural due process claim in so far as he has only provided a "condensed version of events." (*See* ECF 27 at 8). Therefore, he should also be permitted to amend his complaint to sustain a claim of procedural due process against the individual Defendants in their individual capacity.

2. Right to privacy

Plaintiff also alleges Defendant DCS violated his right to privacy in the course of the CHINS investigation and proceedings, a claim Defendants do not meaningfully address.

As in the substantive due process context, the law recognizes a right to privacy in relation to the family. *Millspaugh*, 746 F. Supp. at 848-49 (collecting cases); *Callahan v. Lancaster-*

*Lebanon Intermediate Unit 13*, 880 F. Supp. 319, 332 (E.D. Pa. 1994) ("[T]here is no dispute

that plaintiffs have a protected liberty interest in familial privacy." (collecting cases)); *Brokaw*,

235 F.3d at 1020 ("[A] parent has a liberty interest in familial association and privacy that—

absent extraordinary circumstances—cannot be violated without adequate pre-deprivation

procedures" (citation omitted)). "While the law certainly recognizes [this right], it has also

limited the scope of such privacy rights, balancing them against the state's interests in children

and their rights." *Millspaugh*, 746 F. Supp. at 848-49 (collecting cases).

The only allegation Plaintiff makes to advance his right to privacy claim is that

Defendant DCS has "facilitated [] violating [a protective] order [out of Illinois]" by permitting

his stepdaughter to have unsupervised visits with her biological father, which he maintains

resulted in an "invasion of privacy." (ECF 27 at 10). But this allegation fails to state a violation

of Plaintiff's right to privacy because claims against Defendant DCS are barred under the

Eleventh Amendment.[17] Therefore, I FIND that Plaintiff's complaint fails to state a claim for a

violation of his right to privacy.

3. Gender Discrimination

Defendants also seek dismissal of Plaintiff's gender discrimination claim, arguing that

Plaintiff was not classified differently or suffered discriminatory conduct because of his gender.

(ECF 22 at 11-12). "The Equal Protection Clause of the Fourteenth Amendment prohibits state

action that discriminates on the basis of membership in a protected class or irrationally targets an

individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse*,

595 F.3d 691, 695 (7th Cir. 2010) (citations omitted). "When a state actor turns a blind eye to the

---

[17] Plaintiff also fails to make a plausible claim for a violation of his right to privacy because "litigants do not have due-process rights in the enforcement of judicial orders." *Kelly v. Herrell*, No. 21-2442, 2022 WL 17851675, at *3 (7th Cir. Dec. 22, 2022) (citation omitted).

Clause's command, aggrieved parties . . . can seek relief pursuant to 42 U.S.C. § 1983." *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) (citation omitted). "In order to establish liability under § 1983, [a plaintiff] must show that the defendants acted with a nefarious discriminatory purpose, and discriminated against him based on his membership in a definable class." *Id.* (collecting cases); *Snyder v. Smith*, 7 F. Supp. 3d 842, 860 (S.D. Ind. 2014).[18]

While Plaintiff alleges that Defendants discriminated against him based on his gender, he does not allege an "intentional or purposeful discrimination." *Nabozny*, 92 F.3d at 453-54 (citing *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir. 1982)). The only allegation pertaining to his gender is that he was "the only male in the courtroom" (ECF 27 at 5), and that he "believe[s] the caseworkers for . . . DCS and CASA have willfully neglected to read [positive parenting reports] . . . to persuade the courts to continue violating [his] rights as a father" (*id.* at 10). In the midst of these allegations, however, Plaintiff does not specifically plead that his gender had anything to do with what happened to him, and that, alone, defeats his claim of gender-based discrimination. *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012).

A reading of the complaint reveals that it "lacks any facts establishing a plausible claim that [Plaintiff was] treated differently than any other persons. Such facts would be necessary to maintain an equal protection claim, since the Equal Protection Clause is 'concerned . . . with equal treatment rather than with establishing entitlements to some minimum of government services.'" *Pelham*, 2012 WL 1600455, at *8 (alteration in original) (citing *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000)).

---

[18] In a traditional equal protection claim, a plaintiff must show that: "(1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendants acted with discriminatory intent." *See Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000) (citation omitted).

Of course, bolstering this conclusion is (1) the fact that Defendants would be immunized for many of these alleged acts and (2) the perennial issue with Plaintiff's complaint, which is that he fails to allege the individual Defendant's personal involvement in the alleged discriminatory practice. Therefore, I FIND that Plaintiff's complaint fails to make a plausible claim for gender discrimination, to the extent he makes the claim under the Equal Protection Clause. However, because Plaintiff states that he has proof of the discrimination (ECF 27 at 12), it is possible he could plead additional facts that salvage his gender discrimination claim against the individual Defendants in their individual capacity, so long as those facts do not implicate immunized conduct. For this reason, Plaintiff should be given leave to amend his gender discrimination claim.

### 4. Federal Statutory Claims

Plaintiff also alleges violations of federal statutory law as predicates for his § 1983 claim, namely, claims under HIPAA, the PKPA, 28 U.S.C. § 1359, 18 U.S.C. § 241, and section 80 of 28 U.S.C. § 1940.[19] Defendants, in response, state that those claims should be dismissed because Plaintiff does not have a private right of action to pursue those claims. (ECF 22 at 10-11 (collecting cases)). Indeed, several of Plaintiff's statutory claims can be disposed of swiftly because he does not have a private cause of action for his claim under HIPAA, *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019); *Heath v. Morey*, No. 3:22-CV-471-JD-MGG, 2022 WL 3868096, at *2 (N.D. Ind. Aug. 30, 2022), the PKPA, *Johnson v. Bradberry*, No. 95 C 5593, 1995 WL 599063, at *1 (N.D. Ill. Oct. 5, 1995); *Maesch v. Maesch*, 761 F. Supp. 584, 585 (S.D. Ind. 1989) ("[The PKPA] . . . does not provide an implied cause of action in

---

[19] Given that 28 U.S.C. § 1359 was historically codified at Section 80 of 28 U.S.C. § 1940, the undersigned will disregard Plaintiff's claim under Section 80 of 28 U.S.C. § 1940. *See Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 829 (1969).

federal court to determine which of two conflicting state custody orders is valid." (citing *Thompson v. Thompson,* 484 U.S. 174 (1988)), and 18 U.S.C. § 241, *McGee v. Nissan Motor Acceptance Corp.*, 619 F. App'x 555, 555 (7th Cir. 2015) (stating it is a "federal criminal statute[] that do[es] not provide a private right of action." (collecting cases)).

As for Plaintiff's claim under 28 U.S.C. § 1359, the statute provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." The statute's purpose "is to limit consideration to cases that 'really and substantially' involve a dispute within the jurisdiction of the federal courts." *Betar v. De Havilland Aircraft of Canada, Ltd.*, 603 F.2d 30, 35 (7th Cir. 1979) (citations omitted). On its face, the statute is inapplicable against Defendants because they have not sought to invoke this Court's jurisdiction over this matter.[20] Consequently, I FIND that Plaintiff fails to state a claim under HIPAA, the PKPA,18 U.S.C. § 241, and 28 U.S.C. § 1359.

5. <u>Qualified Immunity</u>

Defendants assert a defense of qualified immunity for Plaintiff's individual capacity claims. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (citations omitted). That is to say, "[a] public official is entitled to qualified immunity from suit unless he violated a clearly established constitutional right." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "[B]efore

---

[20] Rather, it appears Plaintiff claims Defendants have conspired to invoke the jurisdiction of the Indiana court in order to disregard an Illinois court order, a situation that is not covered by the plain reading of §1359's language.

liability will attach, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Brokaw*, 235 F.3d at 1022 (second alteration in original) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Millspaugh,* 937 F.2d at 1176 (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

"Two questions arise in a qualified immunity analysis, and the court can address them in whatever order the case suggests is best: (1) whether the facts the plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was 'clearly established' at the time of the alleged misconduct." *Hetherington*, 2012 WL 523712, at *4 (citing *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)); *Dockery*, 911 F.3d at 466. "To show that a right is clearly established, the plaintiff must demonstrate that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate.'" *Dockery*, 911 F.3d at 466 (quoting *al-Kidd*, 563 U.S. at 741). "Dismissal of a claim based on qualified immunity is only appropriate where 'the plaintiffs' well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.'" *Moore v. Davis*, No. 1:23-CV-00089-JMS-MG, 2023 WL 4758440, at *10 (S.D. Ind. July 26, 2023) (citing *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020)). As such, the plaintiff bears the burden to show a constitutional right was clearly established by "one of two ways: by pointing to precedent clearly establishing the constitutional right or by 'showing that the violation was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue.'" *McCormick v. Goebel*, 655 F. Supp. 3d 748, 761 (N.D. Ind. 2023) (quoting *Brokaw*, 235 F.3d at 1022). "If the plaintiff fails to make

such a showing, the defendant will prevail." *Id.* (citing *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017)).

On one hand, Plaintiff fails to carry his burden to show that there was a clearly established right that was violated by Defendants. As could be expected, given that he has not responded to the motion to dismiss, Plaintiff "has not identified cases establishing a clear constitutional violation of any asserted rights, nor has he argued his case presents an obvious violation." *See McCormick*, 655 F. Supp. 3d at 761. To make matters worse, "because the balance between a child's liberty interest in familial relations and a state's interest in protecting the child is nebulous at best, social workers and other state actors who cause a child's removal are entitled to qualified immunity" as "the alleged constitutional violation will rarely—if ever— be clearly established.'" *Boston v. Ind. Dep't of Child Servs.*, No. 1:19-cv-03279-JRS-MPB, 2021 WL 795452, at *5 (S.D. Ind. Mar. 2, 2021) (citing *Brokaw*, 235 F.3d at 1022). "Social workers often act on limited information; those who tarry, or resolve all doubts in favor of the parents, chance enduring damage to the children. Immunity helps social workers put their private interests aside and concentrate on the welfare of children." *Id.* (quoting *Millspaugh*, 937 F.2d at 1176-77). These considerations would favor granting Defendants' affirmative defense of qualified immunity.

On the other hand, "[i]ssues of qualified immunity are ordinarily resolved at summary judgment, not on a motion to dismiss." *Huber v. Beth*, 654 F. Supp. 3d 777, 794 (E.D. Wis. 2023) (citing *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022)). "[T]he motion-to-dismiss stage is rarely 'the most suitable procedural setting to determine whether an official is qualifiedly immune,'" because courts "often cannot tell from a complaint whether qualified immunity applies." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (quoting *Hanson*, 967 F.3d at 589).

Given the paucity of facts surrounding Plaintiff's progressive loss of his parental rights, affording Defendants a qualified immunity defense at this juncture would be premature. Thus, assuming the complaint makes a plausible claim that Defendants violated Plaintiff's constitutional rights, I FIND that Defendants should not be granted qualified immunity at this juncture.

6. <u>Remaining State Law Claims</u>

With regards to Plaintiff's state law claims, namely, his claims under Indiana Code §§ 31-21-5-7, 31-21-5-8, and his allegations of interference with custody and child abuse and neglect, Defendants argue that the Court should deny exercising its supplemental jurisdiction because none of the federal claims survive Rule 12(b)(6). Further, Defendants state that the UCCJEA and the state statutory violation do not create a private cause of action.

Even if Plaintiff's federal law claims survive a Rule 12(b)(6) dismissal, his state law claims are either deficient or would compel this Court's abstention. To begin, Plaintiff asserts a claim under Indiana Code §§ 31-21-5-7, 31-21-5-8, but this claim is wholly inapplicable to this Court. Section 7 of the statute states that "[i]n a proceeding to modify a child custody determination, an Indiana court shall determine whether a proceeding to enforce the determination has been commenced in another state." Ind. Code § 31-21-5-7. Section 8 states that "[a]n Indiana court that has jurisdiction . . . to make a child custody determination may decline to exercise its jurisdiction" if "(1) the Indiana court is an inconvenient forum under the circumstances; and (2) a court of another state is a more appropriate forum." Ind. Code § 31-21-5-8. This Court, however is a federal court, not an "Indiana court," and this Court is not vested with jurisdiction to make a child custody determination. *See Azizarab*, 2000 WL 152140, at *2 ("Federal courts have accepted, and Congress has acquiesced in, the rule that federal courts do

not exercise jurisdiction to decide [core matters of family law such as child custody].") And Plaintiff "hasn't presented any reason why the statute shouldn't be given its ordinary and plain meaning . . . ." *See Hetherington*, 2012 WL 523712, at *5 (citing *Citizens Action Coal. of Ind., Inc. v. Ind. Statewide Ass'n of Rural Elec. Coops., Inc.,* 693 N.E.2d 1324, 1327 (Ind. Ct. App. 1998)). Those statutes, therefore, have no effect in this Court.[21] And in any event, considering that only claims against Defendants in their individual capacities can proceed, it is unclear to whom Plaintiff's state statutory claim would apply.

In so far as Plaintiff claims interference with custody and child abuse and neglect—which are deemed to be claims under state law—the Court should decline to extend its supplemental jurisdiction over those claims even if the federal claims survive because the state law claims strictly fall within the jurisdictional purview of state courts. *See Azizarab*, 2000 WL 152140, at *2. Therefore, I FIND that Plaintiff's claim under Indiana Code §§ 31-21-5-7 and 31-21-5-8— namely his claim under the UCCJEA—fail to state a claim for relief, and that the Court should decline to exercise its supplemental jurisdiction over Plaintiff's claims of interference with custody and child abuse and neglect.

### C. Stay

Defendants request, in the alternative, that the Court stay the federal case should any of Plaintiff's claims survive. Aside from *Younger* abstention, "[t]he court has the inherent power to stay civil proceedings, postpone civil discovery, or impose protective orders when the interests of justice so dictate." *Horton v. Pobjecky*, No. 12 C 7784, 2013 WL 791332, at *3 (N.D. Ill. Mar.

---

[21] The UCCJEA is a statute adopted by states and codified at Indiana Code §§ 31-21, *et seq. See Matter of A.R.*, 196 N.E.3d 723, 725 (Ind. Ct. App. 2022). The crux of Plaintiff's UCCJEA claim is that Defendants refused to honor the parenting plan issued by Illinois courts and that Indiana courts have improperly asserted their jurisdiction over his parental rights. Therefore, it appears that Plaintiff's claim under the UCCJEA is the same as his claim under Indiana Code §§ 31-21-5-7, 31-21-5-8.

4, 2013) (quoting *Doe v. City of Chi.*, 360 F. Supp. 2d 880, 881 (N.D. Ill. 2005)). A stay of federal court proceedings is appropriate where parties are involved in ongoing CHINS proceedings and where a plaintiff may not be able to adjudicate his claims in the proceedings. *Rangel*, 2007 WL 1189356, at *3 (staying proceedings where CHINS proceedings did not permit adjudication of plaintiff's claim for damages); *cf. Brown*, 2006 WL 8448164, at *4 (dismissing case where CHINS proceedings were ongoing, implicated important state interests, and provided the plaintiff an adequate opportunity to litigate his federal claims).

Defendants' request, however, must be weighed against another consideration. "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (footnote omitted). Allowing Plaintiff to replead is especially warranted in this matter as he is proceeding *pro se*. *Johnson v. Thompson-Smith*, 203 F. Supp. 3d 895, 908 (N.D. Ill. 2016).

It is not certain from the face of the complaint that Plaintiff's claims against the individual Defendants in their individual capacities would be futile or unwarranted. Notably, it is possible Plaintiff could allege additional facts which would compel the Court's intervention under the *Younger* exception. If Plaintiff could plead additional facts supporting his claim that the underlying state case was conducted with bias or harassment, then abstention would no longer be appropriate. In turn, Plaintiff states in his complaint that he has proof of the discrimination and of several other claims, and that his complaint only stated "a condensed version of events." (*See* ECF 27 at 8, 12). As stated previously, though he needs not submit proof to survive a motion to dismiss under Rule 12(b)(6), it appears Plaintiff could substantiate his current complaint with additional factual allegations based on this reported proof. On this basis,

it is conceivable Plaintiff could amend his complaint to cure the deficiencies related to his claims of (1) bias, harassment, or bad faith in the CHINS proceedings, (2) a violation of his substantive or procedural due process rights, and (3) gender discrimination, to the extent that they are made against the individual Defendants in their individual capacity. [22] Consequently, I FIND that Plaintiff should be permitted to amend his complaint and that Defendants' request to stay the case should be denied.

## IV. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that Defendants' motion to dismiss (ECF 21) be GRANTED in that:

- Plaintiff's claims against the individual Defendants in their official capacity and his claims against Defendant DCS be DISMISSED without leave to amend;

- Plaintiff's state law and federal statutory claims against the individual Defendants in their individual capacity be DISMISSED without leave to amend; and

- Plaintiff's claims of (1) bias, harassment, or bad faith in the CHINS proceedings, (2) violation of his substantive and/or procedural due process rights, and (3) gender discrimination, against the individual Defendants in their individual capacity, be DISMISSED *with* leave to amend.

The Clerk is directed to send a copy of this Report and Recommendation to the parties. Fed. R. Civ. P. 72(b). NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL

---

[22] Nevertheless, Plaintiff should not be permitted to re-plead the following claims as it would be futile: his federal statutory claims, his state law claims, and his claim to a violation of a right to privacy.

THE DISTRICT COURT'S ORDER. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995); *Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).

      Entered this 14th day of February 2024.

/s/ Susan Collins      
Susan Collins
United States Magistrate Judge
